IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VINCENT E. SMITH, #R11677, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 16-cv-00745-MJR |
| | ) |
| JOHN DOE 1, JOHN DOE 2, | ) |
| JOHN COE, MARTIN PHILLIPS,[1] | ) |
| ANNE TREDWAY, STEVE DUNCAN, | ) |
| and LORIE CUNNINGHAM, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Vincent E. Smith, an inmate who is currently incarcerated at Lawrence Correctional Center ("Lawrence"), brings this *pro se* action for alleged violations of his constitutional rights under 42 U.S.C. § 1983 (Doc. 1). He alleges that the conduct giving rise to his claims occurred at Lawrence. Smith's claims appear to potentially stem from two distinct issues—a beating by prison guards, and deliberate indifference to a medical condition. Smith makes numerous claims in relation to these two issues, all falling within the Eighth and Fourteenth Amendments. In connection with these claims, he names John Doe 1 (orange crush officer), John Doe 2 (orange crush officer), John Coe (doctor), Martin Phillips (health care administrator), Anne Tredway (assistant warden), Steve Duncan (warden), and Lorie Cunningham (health care director of nursing). Plaintiff seeks both monetary compensation, and injunctive relief ordering the prison to provide him with adequate medical care.

---

[1] In the list of defendants section of the Complaint, the Plaintiff identifies "Defendant Phillips" as the health care administrator at Lawrence. He also makes a single mention of "Defendant Phillips in the body of the Complaint. However, in the body of the complaint the Plaintiff also states a claim against "Phillip Shicker," an individual who is not listed in the list of defendants or the caption. Based on the information available, the Court is treating "Defendant Phillips" as distinct from "Phillip Shicker."

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to promptly screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

As a part of screening, the Court is also allowed to sever unrelated claims against different defendants into separate lawsuits. In *George v. Smith*, the Seventh Circuit emphasized that the practice of serverance is important, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *George*, 507 F.3d 605, 607 (7th Cir. 2007). Severed counts will be divided into new actions, given new case numbers, and assessed filing fees.

## The Complaint

The Plaintiff alleges that in July 2014, John Doe 1, an officer participating on an orange crush tactical team, came to his cell and began beating him (Doc. 1 at 6). John Doe 1 slammed the Plaintiff's head into the concrete wall multiple times (*Id.*). Meanwhile, John Doe 2 merely looked on and failed to attempt to stop the abuse (*Id.*). After the assault, Plaintiff was given ice for the lump on his head and accompanying headache (*Id.* at 7). Plaintiff alleges in his complaint that, prior to the assault, he never had head pain (*Id.*).

He subsequently visited the medical unit on numerous occasions to treat head pain and vision issues (*Id.* at 7-11). Initially, in September 2014, a doctor opined that the head pain could be caused by an ingrown hair (*Id.* at 7). Plaintiff grieved this diagnosis because he felt it was

incorrect (*Id.*). In September 2014, he experienced head pain, dizziness, blurry vision, and pressure in his head and chest, for which he pressed the emergency button in his cell (*Id.*).

According to the Complaint, in October 2014, Plaintiff saw Defendant Doctor Coe and informed him that he was suffering head pain as a result of John Doe 1's assault (*Id.* at 7-8). Plaintiff alleges that Coe's ongoing course of treatment for his head pain was unsuccessful (Doc. 1 at 9-11). He saw Coe on numerous occasions for pain and pressure in his head, as well as accompanying vision impairment (*Id.*). Coe investigated the symptoms by pressing on the side of Plaintiff's head and face and by shinning a light in his eyes on multiple occasions (*Id.*). Each time, Coe stated that the head pain was likely the result of a swollen artery in the Plaintiff's head (*Id.*). Coe attempted to triage the condition by prescribing a variety of medications, which Plaintiff continued to report were not working (*Id.*). On one visit, Coe told Plaintiff that due to budget he could not organize an MRI or other examination, but that once the Plaintiff was out of custody he should seek a functional MRI—the only way to apparently detect the underlying problem (Doc. 1-1 at 25-26). Coe indicated that absent such a scan, the best he could do was to provide relief from the symptoms with medication (*Id.*). Coe then asked the Plaintiff what type of medication he would like (*Id.*). At some points, the course of treatment included medication and a permit to have ice packs for his head (Doc. 1 at 9-11). Plaintiff mentioned that Coe recorded incorrect information in his medical record, and that he sought to correct it (*Id.* at 7-8).

Plaintiff alleges that Defendant Duncan was aware of the lack of proper care he was receiving via written grievances and a verbal conversation (*Id.* at 7, 10). Despite being on notice of the ongoing issue, Duncan did not take any actions to ensure that the Plaintiff received more comprehensive care (*Id.*). Likewise, Defendant Cunningham was aware of the lack of adequate care because Plaintiff filed a written grievance directed to her (*Id.* at 10). However, she did not

respond (*Id.*). Plaintiff verbally notified Defendant Tredway of his medical issues and Tredway averred that she would look in to the problem, but Plaintiff opined that no action was ever taken (*Id.* at 11).

Plaintiff also alleges that he sent a written grievance to Phillip Shicker, the Illinois Department of Corrections ("IDOC") medical director, but received no response (*Id.*). Further, he submitted grievances seeking the names of John Doe 1 and John Doe 2, but was denied access to that information (*Id.*).

## Discussion

Based on the allegations, the Court finds it convenient to divide the *pro se* Complaint into the following enumerated claims. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

**Count 1:** Eighth Amendment excessive force claim against Defendant John Doe 1 for assaulting Plaintiff during an Orange Crush detail;

**Count 2:** Eighth Amendment failure to intervene claim against Defendant John Doe 2 for failing to intervene or stop John Doe 1 from assaulting the Plaintiff;

**Count 3:** Eighth Amendment deliberate indifference to a serious medical condition claim against Duncan for failing to take action in response to Plaintiff's written and verbal complaints that his head pain was not being adequately treated;

**Count 4:** Eighth Amendment deliberate indifference for failure to treat a serious medical condition claim against Coe for pursuing a course of treatment he knew was ineffective and for declining access to treatment he opined would be effective in identifying the cause of Plaintiff's head pain;

**Count 5:** Eighth Amendment deliberate indifference claim against Cunningham for failing to address Plaintiff's written grievance

>about the adequacy of medical care he was receiving for his head pain;
>
>**Count 6:** Eighth Amendment deliberate indifference claim against Tredway for failing to follow through on a verbal promise to look into the adequacy of medical care being provided for Plaintiff's head pain; and,
>
>**Count 7:** Eighth and Fourteenth Amendment claims against Phillip Shicker for failing to respond to Plaintiff's written grievance about the adequacy of the care he was receiving for his head pain.

Here the Plaintiff has brought two potentially distinct sets of claims—one for the excessive force incident, and one for a pattern of deliberate indifference to his serious medical condition of chronic head pain. As discussed above, at the screening stage, the Court possesses the authority to sever unrelated claims against separate defendants into separate cases. *George,* 507 F.3d at 607. The Plaintiff has made an express effort to intertwine the two sets of claims by alleging in his Complaint that he did not suffer head pain until the July 2014 excessive force incident. However, information contained in the grievances he appended to his Complaint directly refutes his efforts to intertwine his claims.

The Seventh Circuit has held that where an exhibit contradicts information alleged in a complaint, the exhibit controls. *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013). Here, Plaintiff alleges in the Complaint that his head pain started *only after* the assault by John Doe 1, and that he reported the excessive force incident as the cause of his head pain. Although it would make sense to have head pain if his head was in fact slammed into the wall, Plaintiff's grievances and the dates upon which he sought medical care actually suggest that unfortunately he suffered from chronic head pain prior to the excessive force incident. The timeline of events is a bit confusing and convoluted, but it is necessary to recount it here to understand why severance is appropriate.

Based upon the Court's reading of the record, the timeline is as follows: on January 4, 2014, Plaintiff attended a 'three-year-check-up' at the medical unit and he reported intense pressure headaches (Doc. 1-1 at 2); in July 2014 the Plaintiff alleges that he was assaulted by John Doe 1 (Doc. 1 at 6); on the day of the assault, Plaintiff reported being given ice for his head (*Id.* at 7); on September 17, 2014, Plaintiff began an ongoing series of grievances targeted at treating his chronic head pain (Doc. 1-1 at 2). It is not entirely clear what motivated Plaintiff to begin the campaign of grievances in September 2014, though his initial grievance suggests that he was generally fearful of insufficient medical care at the facility, which he alleged had led to a number of recent deaths of fellow inmates (*Id*).

The series of grievances and excerpts of medical records appended to the Complaint indicate that Plaintiff reported chronic head pain during his three-year-check-up in January 2014 and that from September 2014 onward, Plaintiff was frequently seen by medical care to address his head pain. Initially in September 2014, a doctor diagnosed the cause of the head pain as an ingrown hair and apparently told the Plaintiff that the pain could not be the result of the fact that he was struck in the head by a bat over 12 years ago (*Id.* at 2-3). Subsequently, in October 2014, Defendant Coe diagnosed the head pain as the potential side effect of an inflamed artery (*Id.* at 8-9). Following the diagnosis, Plaintiff returned to Coe numerous times and was given a variety of medications and medical passes for ice in an attempt to treat the pain (*Id.* at 10-21).

For whatever reason, in April 2015 the Plaintiff apparently had an opportunity to review his own medical records. Upon doing so, he filed a grievance stating that Coe had falsely written in his medical records that he reported being in a fight in January as a potential contributing factor to his head pain (*Id.* at 22). Plaintiff sought to have his medical records corrected to say that he told Coe "that MAYBE the injury to his head could have come from an old sport injury

or MAYBE from an old fight when he was a kid as stated in grievance of 9/17/14 with a bat!" (*Id.* at 22). After he filed the grievance seeking a correction to his record, Plaintiff was apparently called to the medical unit in June 2015 where Coe confronted him about the request to correct his record (*Id.* at 23-24). In a grievance about the June 2015 visit with Coe, Plaintiff alleged that he also verbally asked Coe why Coe did not note in the medical record that the head pain could also have been caused by the excessive force incident with Orange Crush (*Id.*). Coe apparently ignored the question and prescribed more medication (*Id.*).

On June 26, 2015, Plaintiff was again seen by Coe, who told him that the only way to truly diagnose his symptoms would be a functional MRI (*Id.* at 25-26). Coe also told the Plaintiff that an MRI would cost too much, but that when he got out of prison he should seek one (*Id.*). Coe concluded by asking Plaintiff what medication he wanted to treat the pain (*Id.*).

In addition to the grievances, Plaintiff appended Offender Request Forms from November 2014 onward reflecting his requests to Coe, Duncan and Cunningham for medical care (*Id.* at 29-39).

Plaintiff also appended an affidavit that he prepared in November 2015 documenting his quest for medical care (*Id.* 1-1 at 27). In his affidavit, Plaintiff mentions talking to Coe about the potential sources of his head pain—from an old sport injury or a past fight (*Id.*).

Despite Plaintiff's assertions in his Complaint that the excessive force incident caused his head pain, his grievances tell another story. The excessive force incident took place in July 2014, but a grievance says that he had first reported head pain to the medical unit at his three-year-check-up in January 2014. Though the excessive force incident took place in July, Plaintiff did not actively begin grieving his medical situation until September 2014. At multiple times during his campaign of grievances, he appears to tell prison authorities and Coe that the sole potential

causes of his head pain were a prior sports injury or a childhood fight involving a baseball bat. In a single grievance, Plaintiff attempts to say that he also asked Coe why Coe did not record the excessive force incident as a potential cause of his head pain, but this assertion seems disingenuine. The Orange Crush assertion is sandwiched in time by an April 2015 grievance and a November 2015 affidavit wherein Plaintiff stated that the *only* potential causes of his head pain were the sports injury or the childhood fight. Thus, the bulk of the evidence belies the Plaintiff's assertions in his Complaint that the Orange Crush incident *caused* his chronic head pain.

If the head pain only started after the excessive force incident, Plaintiff would have logically sought to have the medical records reflect that when he sought a correction in April 2015. But instead, he sought only to have the records reflect that the potential sources of his injury were an old sports injury or a childhood fight. Additionally, if the pain began with the July 2014 assault, it is not clear why the Plaintiff waited until September 2014 to start an active campaign for more medical care. In light of these contradictions, the grievances can fairly be interpreted to reveal a course of chronic head pain that medical providers identified as associated with a swollen artery. No information suggests that the swollen artery was the result of a head trauma. The bulk of the evidence at this juncture tends to suggest that the assault and the treatment for a swollen artery were distinct issues. Even if the issues are connected, the Plaintiff is not done a great injustice by severance of the claims. He will still be allowed to pursue all of his claims—albeit in two cases, instead of one.

Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever the claims in Counts Three through Seven (which are unrelated to Counts One and Two) into a separate action. The separate action will have a newly assigned case number, and it

shall be assessed a filing fee. The severed case shall undergo preliminary review pursuant to § 1915A after the new case number and judge assignment has been made.

Counts One and Two shall remain in this action. A separate order shall be issued in this case to review the merits of these claims. Plaintiff shall be provided with a copy of the merits order as soon as it is entered. No service shall be ordered on any defendant at this time.

## Disposition

**IT IS HEREBY ORDERED** that Plaintiff's claims in **COUNTS THREE THROUGH SEVEN,** which are unrelated to the claims in **COUNTS ONE AND TWO,** are **SEVERED** into a new case against Defendants **COE, PHILLIP, TREDWAY, DUNCAN, and CUNNINGHAM**.

The claims in the newly severed case shall be subject to merits review pursuant to 28 U.S.C. § 1915A after the new case number and judge assignment is made. In the new case, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order;
- The Complaint (Doc. 1);
- Plaintiff's motion to proceed *in forma pauperis* (Doc. 2);
- Additionally, the Clerk is **DIRECTED** to **ADD** Defendant **PHILLIP SHICKER** to the list of named defendants in the newly created case. Plaintiff mentions SHICKER in the body of the Complaint, so adding him to the list of Defendants will allow the Court to address this orphan claim by the Plaintiff.

Plaintiff **will be responsible for an additional $350 filing fee** in the newly severed case. No service shall be ordered in the severed case until the § 1915A review is completed.

**IT IS FURTHER ORDERED** that the *only claims remaining in this action are Counts One and Two* against Defendants John Doe 1 and John Doe 2.

**IT IS FURTHER ORDERED** that Defendants **COE, PHILLIP, TREDWAY, DUNCAN, and CUNNINGHAM** are **TERMINATED** from **this** action with prejudice.

**IT IS SO ORDERED.**

**DATED: August 12, 2016**

**s/ MICHAEL J. REAGAN**
**U.S. District Judge**
